UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

LIONEL R. LINDSEY, TDOC#371347     )
                                      )
v.                                        )           No.: 2:10-CV-193
                                        )           *Greer/Inman*
TONY PARKER, Warden                 )

## MEMORANDUM OPINION

Acting *pro se*, Lionel R. Lindsey ("petitioner" or "Lindsey"), a prisoner in the custody

of the Tennessee Department of Correction at the Northwest Correctional Complex, brings

this petition for a writ of habeas corpus under 28 U.S.C. § 2254, (Doc. 1). Petitioner

challenges the constitutionality of his confinement pursuant to his 2004 Sullivan County,

Tennessee convictions for two cocaine-trafficking offenses. Respondent Warden has

answered the petition and has filed copies of the state court record, (Docs 11-13, Addenda

1-23 and Trial Exhibit 6). Petitioner has replied to the Warden's response, (Doc. 22), and

thus this case is ripe for disposition.

### I. Procedural History

In 2004, petitioner was convicted of two counts of the sale of more than .5 grams of

cocaine within 1000 feet of a school. For these crimes, Lindsey was sentenced to an

effective 32-year, 6-month term of imprisonment, to be served at 100%. Following the

denial of Lindsey's motions for a new trial, he pursued a direct appeal in the Tennessee Court

of Criminal Appeals ("TCCA"). Unsuccessful in the TCCA, petitioner sought permission

to appeal in the state supreme court, but was rebuffed there as well. *State v. Lindsey*, 208

S.W.3d 432 (Tenn. Crim. App.), *perm. app. den*., (Tenn. 2006). Next, he filed a petition for post-conviction relief in the trial court, which denied the petition after an evidentiary hearing. Review of the trial court's decision resulted in an affirmance by the TCCA and Lindsey's efforts to obtain further review in the Tennessee Supreme Court were rejected. *Lindsey v. State*, No. E2008-02789-CCA-R3-PC, 2009 WL 5173770 (Tenn. Crim. App. Dec. 30, 2009), *perm. app. den*., (Tenn. 2010). Thereafter, Lindsey filed this instant application for a writ of habeas corpus, seeking release from his alleged unlawful confinement.

## II. Factual Background

The following factual recitation is taken from the TCCA's opinion on direct review of Lindsey's convictions. *State v. Lindsey*, 208 S.W.3d at 435-37.

According to the proof at trial, Sullivan County Sheriff's Department Detective Sherry Ramsey set up two controlled buys of cocaine in Kingsport, Tennessee, using Ginger Wilson, a confidential informant to make the purchases. In arranging the first buy, on October 29, 2001, Ms. Wilson made a series of calls using Detective Ramsey's cell phone, arranging to buy cocaine on a street corner near the Salvation Army building. After searching Ms. Wilson and providing her with currency which had been photocopied, Detective Ramsey drove her to the designated meeting location, where two African-Americans were standing in the front yard of a house. Ms. Wilson got out of the vehicle, walked to the street corner, handed the cash to one of the men who had walked over to her. Although Detective Ramsey witnessed an exchange, she could not see the actual contents of the exchange. Ms. Wilson returned to the car and handed the detective a baggy containing a white powdery substance.

2

Two days later, the second drug transaction was arranged, using the same method, to wit, a call to a contact and a proposed meeting at the same location. This time Ms. Wilson wore a wire transmitter, and the transaction was video-taped from a police surveillance vehicle, located in a nearby parking lot. Prior to the street-corner transaction, Ms. Wilson was searched and, to fund the drug purchase, was given three hundred dollars ($300) cash, which also had been photocopied. Ms. Wilson was met by Lindsey and was handed the money. Petitioner gave her a baggie with a white powdery substance inside. Ms. Wilson, who, at the time of trial, was in a nursing home in a coma, did not testify. However, other officers and two experts testified.

Deputy Sheriff Richard McCann, the videographer who captured the second drug transaction from the surveillance vehicle, identified Lindsey as the individual who had met Ms. Wilson on the street corner. Brian Bishop, an agent with the Kingsport Police Department, testified that a dark-colored automobile, registered to Lindsey, was parked close to the street corner during both drug deals. Agent Bishop further stated that he had seen petitioner leave in the vehicle some minutes after the first transaction concluded and that he had seen him drive the automobile prior to both drug deals.

A forensic scientist testified that the substance in the baggies procured by Ms. Wilson during the drug transactions was cocaine base, which weighed, respectively, 2.4 and 2.2 grams. The Geographic Information Systems Manager of the City of Kingsport, who is responsible for the city's computer mapping needs, testified that, based on aerial photographs

3

he had viewed, the intersection where the supposed drug deals occurred lay approximately 480 feet from the New Horizon Alternative School.

### III. <u>Discussion</u>

Petitioner's habeas corpus application contains six grounds for relief. Those grounds are that: 1) in several instances, he had ineffective assistance of counsel, 2) he did not waive his motion to dismiss under state criminal procedural law, 3) the indictment was amended after jeopardy attached, 4) his motion for a mistrial was erroneously denied, 5) he was sentenced improperly, based on a conviction since determined to be invalid, and 6) he was never arraigned on Counts 31 and 32 in a new presentment, which followed the original presentment and which added the statutory section for a school zone enhancement.

The Warden submits, in his response, that Lindsey is not entitled to the writ based on the deferential review standards for adjudicated claims in 28 U.S.C. § 2244(d), the procedural default doctrine, or the non-cognizable subject matter of certain claims, (Doc. 11). Petitioner suggests, in his reply, that he has committed no procedural default, that his claims are cognizable, and that the state court unreasonably applied the governing legal rule to his claims of ineffective assistance, thus, justifying issuance of the writ, (Doc. 22). The Court agrees with the Warden and, for the following reasons, will **DENY** the petition and **DISMISS** this case. The alleged non-cognizable claim will be addressed first.

### A. **Non-Cognizable Claim (Pet., Ground Five)**

In Ground Five, Lindsey maintains that he was improperly sentenced as a Range II, multiple offender, based on a prior conviction that was later determined to be invalid. Petitioner claims that he has secured an NCIC[1] report which verifies that he did not have a cocaine trafficking charge in Pennsylvania in 2000. Petitioner contends that he advised his attorney that he did not have this charge, but that his attorney never objected to nor investigated this information, though the charge was used as an enhancing factor in petitioner's sentencing.

Petitioner asserts that, in an effort to exhaust his state remedies, he filed a motion to recall the mandate to re-open his post-conviction, on the grounds that his conviction was illegally enhanced due to a false conviction for trafficking cocaine, but that the Tennessee Supreme Court for the Eastern division denied the motion, stating that his filing showed no basis upon which to recall the mandate. According to petitioner, since the state supreme court would not recall the mandate, he was unable to exhaust the state remedies on this issue. However, exhaustion is not the issue here, as respondent aptly argues that petitioner cannot be granted relief on this ground because it is not a recognizable federal habeas corpus claim.

The law is clear. The interpretation of state statutes lies within the exclusive purview of state courts, since those courts are the final arbiters of state law. *See Lewis v. Jeffers*, 497

---

[1] The National Crime Information Center [NCIC] "is an outgrowth of the Attorney General's congressionally mandated obligation to acquire, collect, classify, and preserve identification, criminal identification, crime, and other records and to exchange such information with authorized officials on both the federal and state level." *United States v. Mackey*, 387 F.Supp. 1121, 1123 (D.C.Nev. 1975) (internal quotation marks and footnote omitted).

U.S. 764, 780 (1990). Where state courts have spoken on a matter of state law, it is not the role of a federal habeas court "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A decision, which rests entirely state law, generally is not of federal concern. *See e.g., Swarthout v. Cooke*, _ U.S. _, _, 131 S. Ct. 859, 861, 178 L. Ed.2d 732 (2011) (claims which allege a state law error or an incorrect application of state law do not present cognizable issues for federal habeas review).

More specifically, an allegation that a sentence has been imposed in violation of state sentencing law does not present a constitutional issue. *See e.g., Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (assertion that sentences were aggregated under state law causing illegal total sentence is not a cognizable habeas corpus claim); *Howard v. White*, 76 Fed. Appx. 52, 53, 2003 WL 22146139, *2 (6th Cir. Sept. 16, 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."). Because this claim does not allege a violation of federal constitutional law, it provides no recognizable basis for habeas corpus relief.

## B. Procedurally Defaulted Claims (Pet., Grounds Two and Six)

### 1. **The Law**

A state prisoner who petitions for habeas corpus relief must first exhaust his available state court remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. 28 U.S.C. § 2254(b) (1). The exhaustion rule requires total exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509 (1982) (emphasis added), meaning that a petitioner must have fairly presented each claim to all levels of appropriate state courts.

6

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). A claim must also be offered on a federal constitutional basis—not merely as one arising under state law. *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991)).

A prisoner who has failed to present a federal claim to the state courts and who is now barred by a state procedural rule from returning with his claim to those courts has committed a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Federal review of a procedurally defaulted claim is foreclosed, unless the habeas petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id.*

Cause can be shown where interference by state officials has rendered compliance with the rule impracticable, where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986). A petitioner demonstrates prejudice by establishing that the constitutional error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

**2**. <u>**Analysis**</u>

    a. <u>Waiver of Motion to Dismiss</u>

In Ground Two, Lindsey claim that the trial court improperly determined that he had waived his motion to dismiss the indictment under Rule 12(b)(2) of the Tennessee Rules Criminal Procedure. According to Lindsey, the superseding indictment alleged, in two separate counts, that petitioner did "knowingly sell and, or deliver point five (.5) grams or more of a substance containing cocaine . . . within 1,000 feet of a public secondary school, a violation of Tenn. Code Ann. § 39-17-417 & 432." The problem, so argues Lindsey, is that "selling and delivering" is not recognized as an offense under the cited statute.

The trial court held a hearing on the matter, concluding that the indictment charged statutory offenses, to wit, the offense of selling a controlled substance and the offense of delivery of a controlled substance, but impermissibly charged both offenses within a single count. Finding that the objection to the defective indictment had not been raised before trial and, thus, had been waived, the lower state court, recognizing that jeopardy had attached, granted the prosecution's motion to amend the indictment without Lindsey's consent and allowed the deletion of the words, "and, or deliver" from each count of the indictment, leaving petitioner charged with the sale of cocaine.

This issue was raised in Lindsey's direct appeal and the TCCA affirmed the lower court's ruling that he had waived his opportunity to contest the indictment in a motion to dismiss.

When a state invokes a procedural default defense, a court in the Sixth Circuit must apply a four-factor analysis to determine: 1) whether there is a procedural rule which applied to a petitioner's claim and whether a petitioner complied with the rule; 2) whether the

procedural rule was actually enforced against a petitioner; 3) whether that rule is an adequate and independent state ground sufficient to block habeas review; and 4) whether a petitioner can demonstrate cause for his failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Beuke v. Houk*, 537 F.3d 618, 630 (6th Cir. 2008) (applying *Maupin*).

Lindsey makes several arguments to demonstrate that his claim is not barred by procedural default. In Lindsey's reply to respondent's answer, he asserts that, under state law, the failure to charge an offense is to be noticed at any time during the pendency of the proceeding (an argument which was presented to and rejected by the state court), impliedly arguing that procedural default defense cannot be applied to the claim of a defective indictment since he objected to the indictment in the midst of the trial. The argument that the state court misunderstood and misapplied its own law goes nowhere because, as observed earlier, a state's interpretation and application of its own law is not usually a cognizable matter in a federal habeas corpus proceeding. *Pudelski v. Wilson* 576 F.3d 595, 610-611 (6th Cir. 2009) ("State law issues are not subject to habeas review. . . .") (citing *Estelle v. McGuire,* 502 U.S. at 67-68). Moreover, the type of argument made here has no role to play in the *Maupin* inquiry.[2]

---

[2] Of course, a state law ground will be inadequate to bar a federal claim where it is applied "infrequently, unexpectedly, or freakishly;" "discriminat[e][s] against the federal rights asserted;" has a "purpose or pattern to evade constitutional guarantees;" or, if discretionary, is invoked more harshly against disfavored federal rights." *Walker v. Martin*, 131 S.Ct. 1120, 1130 -1131 (2011) (all citations omitted). Lindsey has not alleged that any of these things are present in his case.

Though Lindsey contends that there was no actual procedural default and that the first three *Maupin* factors are not satisfied in his case, (Doc. 22 at 4), he is incorrect. This is so because Tennessee has a procedural rule of waiver, *see Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir. 2002); the waiver rule was enforced against petitioner, *see State v. Lindsey*, 208 SW.3d 432, 439 (Tenn. Crim. App. 2006); and the rule is an adequate and independent state ground sufficient to foreclose habeas review. *See Hutchison*, 303 F.3d at 738). The finding of waiver amounts to a procedural default, *see Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977), which can be overcome by a showing of cause or a miscarriage of justice. Though Lindsey extensively argues the merits of his claim, he offers no cause and prejudice to excuse his procedural default. Accordingly, habeas review of Ground Two is foreclosed by Lindsey's procedural default.

b. Not Arraigned on New Presentment

Lindsey maintains, in Ground Six, that he was not arraigned on counts 31 and 32 of the new presentment that added the statutory section for a school zone enhancement.

At trial, Attorney General Perrin stated on the record that Lindsey had not been arraigned on the new presentments.

GENERAL PERRIN:        Yes, Your Honor, there were a couple of motions that defense counsel filed on behalf of Mr. Lindsey. I had spoken to Mr. Miles prior to court this morning and we have agreements as far as these motions, starting with defendant's motion to sever offenses. The parties have agreed that only counts 31 and 32 would be heard this morning by this jury. I do want to alert the clerk that both

Counts 31 and 32, there was a presentment returned by the Grand Jury subsequent to the original presentment that added the statutory section for a school zone enhancement. That had been left off the initial, so we need to make sure that they're arraigned, Mr. Lindsey is arraigned on that.

(Trial Tr. vol. I, 2).

Petitioner contends that because he was never arraigned on the new presentments in Counts 31 and 32, his sentence is void.

Respondent alleges that Lindsey did not offer this claim to the state courts for consideration prior to raising it in his habeas corpus petition, and that this constitutes a procedural default. Lindsey responds that he was unaware of the issue during the time he was resorting to his state remedies, but, through diligence, became aware of his claim only after all state remedies were exhausted. Respondent points out that the factual support offered to sustain the claim was the prosecutor's comments during the trial, acknowledging that Lindsey had not been arraigned on the new presentment which charged the school zone enhancement. There is no reason, so respondent suggests, that Lindsey could not have raised this claim while he was pursuing state remedies.

The Court agrees with respondent. Because Lindsey did not offer the claim to the state courts prior to submitting it in his federal petition, he must show cause and prejudice for his omission to obtain habeas corpus review. *Coleman*, 501 U.S. at 732. His claim of cause founders and he has forfeited federal review of this claim, by virtue of his procedural default.

## B. Adjudicated Claims

Under the review standards set forth in 28 U.S.C. § 2254(d), a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies that principle to the particular facts of the case. *Id.*, at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

Findings of fact which are sustained by the record are entitled to a presumption of correctness, unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## 1. Ineffective Assistance of Counsel (Pet., Ground One)

12

In this ground, petitioner claims, as he largely did in the state courts, that he had ineffective assistance due to his trial attorney's failure: a) to properly investigate the case, prepare an adequate defense, and interview Lindsey's co-defendant, Robert "Jay" Sullivan, and/or his attorney; b) to object to the testimony of Detective Ramsey involving hearsay statements made by C.I. Ginger Wilson, who was unavailable at trial, and to a remark offered by District Attorney General Greeley Wells during his closing argument; c) to investigate and interview Kingsport City School Board members[3] as to whether the Alternative School was being used as a school at the time of the alleged offenses on October 29, 2001 and October 31, 2001; and d) to properly investigate and obtain an expert witness to measure the distance between the Alternative School and the location of the alleged offenses.

Respondent argues that, under § 2244(d)'s test, the adjudication of the trial-counsel claim must remain undisturbed since the state court decision was reached through a reasonable application of the pertinent Supreme Court precedent and a reasonable determination of the facts presented in the state court proceedings.

a. The Controlling Law

The Supreme Court has established a two-part test for determining when assistance of counsel is ineffective. *See Lockhart v. Fretwell*, 506 U.S. 364, 376-79 (1993); *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient, that

_____

[3] Because Lindsey did not allege in state court that counsel was ineffective for failing to pursue interviews with school board members, that particular theory has been procedurally defaulted. *See Wong v. Money*, 142 F.3d 313, 321-22 (6th Cir.1998) (finding ineffective assistance claim procedurally defaulted where argument in federal court was based on different grounds than argument in state court).

is, outside the "wide range of professional assistance. *Strickland*, 466 U.S. at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. In order to show that counsel's performance was deficient, a petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687.

Second, a petitioner must demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* The "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

    b. <u>Analysis</u>

The facts Lindsey offers in support of Ground One is a summary of the evidence and testimony at trial. Yet, he makes no effort to use those facts to illustrate counsel's alleged errors. Accordingly, the Court will review the facts and arguments which supported this ground in state court as being those now offered to support his habeas claims. The Court addresses each sub-claim individually.

    1) *Investigate/Prepare a Defense/ Interview Co-Defendant and/or Attorney*

Lindsey alleged in state court that his attorney failed to investigate his co-defendant's plea agreement to determine whether he would testify to Lindsey's benefit. At the post-

conviction hearing, Lindsey testified that he discussed the plea agreement entered by Sullivan, his co-defendant, but that counsel did not investigate the circumstances underlying the plea agreement or determine whether Sullivan would testify for the defense and offer favorable testimony for Lindsey.

The state trial court found that Lindsey had not shown how any investigation of cooperation with Sullivan would have helped Lindsey's case. The TCCA affirmed the lower court's ruling, after it concluded that Lindsey had failed to make a proper showing of prejudice, as he had presented no evidence suggesting that further investigation into the plea agreement would have aided his defense or that Sullivan's testimony "would have altered the outcome of his trial." *Lindsey*, 2009 WL 5173770, at* 5.

As noted earlier, prejudice is established by a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The TCCA's holding that no prejudice accrued based on Lindsey's failure to show that his co-defendant's testimony "would have altered the outcome of his trial" does not comport with the prejudice test in *Strickland*. *See Strickland*, 466 U.S. at 693-94 (rejecting an "outcome-determinative standard" [i.e., that counsel's deficient conduct more likely than not altered the outcome in the case] as the test for prejudice); *Al-Khalil v. Davis*, 435 Fed.Appx. 493, 494-495, 2011 WL 3583247, 2 (6th Cir. Aug. 15, 2011) (requiring petitioner to show that "the proceeding's outcome would have been different" is contrary to *Strickland*);

*Vasquez v. Bradshaw*, 345 Fed. Appx. 104, 111-112, 2009 WL 2672747, *7 (6th Cir. Sept. 2, 2009) ("This is not a casual error. A 'reasonable probability' of difference does not mean 'would have been different,' [as t]he latter formulation puts a greater burden on the petitioner."). Thus, the Court will examine the prejudice aspect of Lindsey's ineffective assistance claim de novo. *Fulcher v. Motley*, 444 F.3d 791, 799 (6th Cir. 2006) (Where a state court applies a rule that contradicts the governing law in Supreme Court cases, § 2244(d)(1) imposes no constraint and "de novo review is appropriate") (internal citations and quotation marks omitted).

However, even under de novo review, Lindsey cannot show that he was given ineffective assistance of trial counsel. *Wong v. Belmontes*, 558 U.S. 15, 27-28 (2009) ("*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.).

The record discloses that Lindsey did not adduce any evidence in state court to support his allegations concerning Sullivan's testimony and its purported usefulness to the defense. During Lindsey's cross-examination at the evidentiary hearing, he stated that he had never asked Sullivan to testify for him and that, because counsel never asked him about the matter, he had never indicated to counsel that Sullivan had offered to testify on his behalf, (Add. 14, Trial Tr., Test. of Lionel R. Lindsey 58). And counsel stated, during his direct examination, that he "could say for sure" that Lindsey had never told him that Sullivan had offered to testify for him, (*Id.*, Test. of Jeffrey Polk Miles 78). Indeed, in its oral rulings at the conclusion of the evidentiary hearing, the post-conviction court commented that Lindsey

16

"says here in his testimony today, '*Well, Sullivan would someway help me out*,' but never " really said how he would help him out," (*Id.*, Ruling of the Court at 121) (italics in original).

The Sixth Circuit "has held that a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748 -749 (6th Cir. 2002). Because Lindsey offered no proof to show that Sullivan would have testified or that, if he did testify, it would have redounded to the benefit of the defense, Lindsey has failed to show prejudice for this alleged error on the part of his trial attorney. *Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir. 2002) (finding no prejudice where petitioner failed to demonstrate "how the retention of experts, an examination of Henderson's statement, and contacting and/or interviewing his family members would have been beneficial to his defense").

Absent a showing of prejudice, the state court correctly found that this claim of ineffective assistance lacks merit. *See West v. Bell*, 550 F.3d 542, 554 (6th Cir. 2008) ("Though the state court clearly applied an incorrect standard, it reached the correct outcome.").

### 2) *Object to the Hearsay Statements*

When this claim was raised in the state appellate court, Lindsey related four instances where Officer Ramsey testified to statements made by Ms. Wilson, to which counsel failed to object. These statements were: 1) that Sullivan was present on October 29, 2001; 2) that

Darius McNeill was the individual calling on the mobile telephones; 3) that Ms. Wilson identified Sullivan to Officer Ramsey; 4) and that she (Ms. Wilson) had met with Lindsey and that he had given her his telephone number. Lindsey also claimed counsel allowed to go unchallenged the prosecutor's closing argument, wherein he stated that Ms. Wilson had identified Lindsey as the perpetrator.

As the TCCA correctly pointed out, the first three statements do not identify Lindsey as the perpetrator or associate him with the crime. No prejudice could have accrued to Lindsey as a result of hearsay statements directed to the culpability of another person. Indeed, Lindsey's defense revolved around identification and counsel testified at the evidentiary hearing that " where there's confusion on the part of a witness as to who's who, that can only help Mr. Lindsey," (Add. 14, Evid. Hr'g Tr., Miles Test. 89). *See Narlock v. Hofbauer*, 118 Fed.Appx. 34, 35, 2004 WL 2792478, *1 (6th Cir. Dec. 6, 2004) (agreeing with district court's finding of no ineffective assistance "because much of the hearsay was consistent with the petitioner's defense theory and therefore not prejudicial"). Under these circumstances, Lindsey has not borne his burden of showing a reasonable probability that, had counsel objected to the cited three statements to which Officer Ramsey testified at trial, the result would have been different.

The fourth statement, to wit, that Ms. Wilson told Officer Ramsey that she had met with Lindsey and that he had given her his telephone number, was not incriminating, as there was no linkage between the contents of the statement and the criminal acts of selling cocaine with which Lindsey was charged. Furthermore, counsel stated that he "made a tactical

18

decision not to object because [he] didn't see how it hurt [his] client," (Add. 14, Evid. Hr'g Tr., Miles Test. 89).  Petitioner presented nothing to show that it did harm his defense.

The final instance of hearsay which passed without counsel's objection was the prosecutor's closing argument that "when Ginger Wilson got back to the car and opened her hand out and gave the officer the crack cocaine , on both occasions she said it was . . . Lionel Kewan Lindsey that had sold it to her.  Ginger Wilson said that and that's the evidence in this case.  Ginger Wilson identified him. . . ," (Add. 2, vol. IV, Trial Tr. 493).  At the evidentiary hearing, counsel explained that the statement was at the very end of the prosecutor's rebuttal and that he had made a tactical decision not to object to what he believed was an honest mistake, as he did not want to highlight or draw more attention to the prosecutor's argument.

At that hearing, Lindsey too testified about the prosecutor's  closing argument but he offered nothing to show how counsel's failure to object had injured his defense, (Add. 14, Evid. Hr'g Tr., Lindsey Test. 67-68).  And, in Lindsey's brief on post-conviction appeal, he failed to offer, much less develop, any specific factual allegations to show how he was prejudiced as a result of counsel's claimed error.   Instead, he simply asserted that the "[f]ailure of trial counsel to timely object to said testimony was extremely harmful to [Lindsey]'s defense and raises (sic) to the level of ineffective assistance of counsel due to the prejudice to [Lindsey]," (Add. 16, Petr.'s Post-conviction Appeal Br. 12).  In the absence of any explanation in the state court, or in this Court for that matter, as to how counsel's error harmed Lindsey, there is nothing to support a finding that he suffered any prejudice from counsel's alleged shortcoming.

19

Furthermore, as the post-conviction court noted, two officers and a video recording also identified Lindsey and given this additional proof of identification, Lindsey has not shouldered his burden of showing that he suffered any prejudice from the lack of an objection to the comment. *Weygandt v. Ducharme*, 774 F.2d 1491, 1493 (9th Cir. 1985) ("Although [petitioner's] attorney should have objected to the prosecutor's improper remarks, his failure to do so, evaluated in light of the overwhelming evidence of guilt presented at trial, did not so prejudice [the petitioner] as to deprive him of a fair trial.").

The Court has carefully reviewed the record and finds, as did the state court, that Lindsey did not receive ineffective assistance from his attorney so as to deny him the right to counsel secured to him under the Sixth Amendment of the U.S. Constitution. *West,* 550 F.3d at 554 ("We cannot grant habeas unless [petitioner] is 'in custody in violation of the Constitution or laws or treaties of the United States.'") (citing to 28 U.S.C. § 2254(a).

3) *Failing to investigate the school zone enhancement*

As noted, Lindsey was convicted of selling cocaine within 1,000 feet of the New Horizon Alternative School (NHAS). In his second sub-claim of ineffective assistance, Lindsey charges counsel with failing to investigate and interview Kingsport City School Board members to establish that the NHAS was being used as a school at the time of the alleged offenses on October 29, 2001 and October 31, 2001.

As the record shows and as the TCCA correctly pointed out, Lindsey adduced nothing to show that the NHAS was not operated as a school or that the drug trafficking with which he was charged occurred beyond 1,000 feet of the school. Absent proof to this effect,

20

Lindsey has not established that, had counsel performed the investigation Lindsey alleges that he should have conducted, there exists a reasonable probability of a different result.

Furthermore, again as the TCCA pointed out, the elements of the school zone enhancement were established through the unrebutted testimony of two witnesses at the trial, who testified that the NHAS was a secondary school and that the school was located 480 feet, or less than 1,000 feet, from the corner where the drug-deals occurred, (Add. 2, vol. II, Test. of Jeffrey Allen Berry 262-266, and Test. of Jacob Lee White 267-72).

Finally, counsel testified that he personally measured the distance between the location of the alleged drug-sales and the NHAS and found them to be within 1,000 feet of each other. The trial court accredited counsel's testimony and this Court will do the same, as Lindsey has produced no clear and convincing evidence to the contrary.

This sub-claim of ineffective assistance fails due to the lack of showing of prejudice. Because Lindsey did not receive ineffective assistance, no constitutional right was violated and he cannot obtain habeas corpus relief. *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2265 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, *see* § 2254(a).").

4) *Failing to hire an expert (school zone enhancement)*

In this claim, which is allied to the previous claim, Lindsey argues that counsel was ineffective for failing to properly investigate and obtain an expert witness to measure the distance between the NHAS and the location of the alleged offenses. The arguments which supported this claim in state court were that trial counsel told Lindsey that he drove from the

21

corner where the claimed drug-dealing occurred to the NHAS; that, in response, Lindsey urged him to obtain a zoning wheel and measure the distance more appropriately; but that, to Lindsey's knowledge, nothing else was done by counsel to obtain a more accurate measurement, (Add. 16, Petr.'s Post-conviction Appeal Br. 14-15).

After pointing out that the distance between the two locations was established by testimony given by the State's witness and that counsel also testified that he too had measured the distance, though he knew that the distance was not more than 1,000 feet, the post-conviction court found that without contradiction of that testimony, there was no prejudice. The TCCA, likewise, found that with regard to the proximity of the NHAS to the drug-deals, Lindsey had not shown any prejudice.

This Court agrees with the state court that, unless Lindsey proffers evidence contravening that testimony, which he has not done, he has failed in his obligation to show prejudice. Accordingly, this last sub-claim of ineffective assistance is groundless. Absent a constitutional violation, no relief is warrant with respect to counsel's final claimed error.

## 2. Amendment of Indictment (Pet., Ground Three)

In his second claim in the adjudicated-claims category, Lindsey contends that permitting the State to amend the indictment after jeopardy had attached was not harmless error, as the state court held. The facts which follow were presented in Lindsey's habeas corpus petition in support of this ground.

> Jeopardy had clearly attached in the case sub judice when the Defendant/Plaintiff filed his motion to dismiss, and rule 7(b) does not allow an amendment to the indictment after jeopardy attaches, without

defendant's consent. Tenn. R. Crim. P. 7(b). Thus, the trial court erred in allowing the State to amend the indictment to delete the phrase "and, or deliver" from Count 31 and 32. The trial court acknowledged the dilemma that, without some sort of action, the offenses as charged in counts 31 and 32 could not be submitted to the indictment under the analysis in *Isabell*.[4]

(Doc. 1, Pet. at 17).

Respondent argues that any attack on the state court decision which is based on a violation of a state criminal procedural law is not cognizable under the Court's habeas corpus jurisdiction. The Court agrees that it has no warrant to review a decision resolving a claim of a state law violation, as it can entertain only purported violations of the U.S. Constitution or federal law. *Estelle v. McGuire,* 502 U.S. at 67-68.

Respondent further argues that the state court's ruling of harmless error cannot be disturbed under the AEDPA's deferential standards of review. In state court, Lindsey argued that permitting the amendment after jeopardy attached "denied him his federal and state constitutional rights to be indicted by a grand jury," (Add. 4, Petr.'s Direct Appeal Br. 11). However, this argument was incorrect, as the law is well-settled that a state criminal accused has no *federal* constitutional right to be indicted by a grand jury. *Beck v. Washington*, 369 U.S. 541, 545 (1962) ("[T]his court has consistently held that there is no federal constitutional impediment to dispensing entirely with the grand jury in state prosecutions.) (citing to *Hurtado v. California*, 110 U.S. 516, 4 S. Ct. 292, 28 L. Ed. 232 (1884)).

---

[4] *Isabell* held that an indictment which charged a defendant with "sale or delivery" of illegal substances "impermissibly charged two separate offenses within a single count," which violated defendant's right to a unanimous jury verdict. *State v. Isabell*, 2003 WL 21486982, *3-*4 (Tenn. Crim. App. June 27, 2003).

In petitioner's reply, (Doc. 22), he maintains that he is asserting that the duplicitous indictment violated his Sixth Amendment right to a unanimous jury verdict, (Doc. 22 at 4). The TCCA, citing to *Isabell* in Lindsey's case, observed that unanimity of a jury verdict is a requirement embedded in the right to a jury trial. While that requirement may inhere in the Tennessee Constitution, *see State v. Lemacks*, 996 S.W.2d 166, 169-70 (Tenn.1999), the U.S. Constitution imposes no similar requirement. *See McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 335 n.14 (2010) (Unanimity of a jury verdict in state criminal trials is not a constitutional mandate.) (citing *Apocaca v. Oregon*, 406 U.S. 404 (1972), and *Johnson v. Lousiana*, 406 U.S. 356 (1972)); *but see Burch v. Louisiana*, 441 U.S. 130 (1979) (use of a six-person jury requires unanimity).

It is true that the TCCA held that it was error to permit the indictment to be amended, over Lindsey's objection, after jeopardy attached. But it is also true that the error found by the TCCA was an error involving a state criminal procedural rule, and not a constitutional error. "The application of a state harmless-error rule is, of course, a state question where it involves only errors of state procedure or state law." *Chapman v. California*, 386 U.S. 18, 21 (1967). The harmless error test, set forth in *Chapman*, applies only where a trial error of constitutional magnitude occurred. *Id*. at 22 (characterizing the test as "a harmless-constitutional-error rule"); *see Brecht v. Abrahamson*, 507 U.S. 619 (1993) (applying stricter standard for harmless constitutional error on collateral review of state court convictions under § 2254).

Accordingly, this habeas court cannot review the state court's harmless error decision to determine whether it passes the tests in § 2254(d), as it involves a state question and not a federal constitutional matter. *Pulley v. Harris*, 465 U.S. 37 (1984) (A federal court may not issue a writ of habeas corpus based on a perceived error of state law.). Therefore, there was no adjudication of a federal constitutional error and habeas corpus review of the state court's harmless error ruling is impermissible under ADEPA and the authorities cited in above discussion.

In his reply, Lindsey states that he is also asserting, with respect to the indictment claim, that it violated his right to "notice and charge," (Doc. 22 at 4). The state court, in its wide-ranging discussion of harmless error, concluded that "the deletion of the words 'and, or deliver,' did not result in the charge of a new or different offense [and] clearly provide . . ample notice of the offense charge, including the facts constituting the offense, the name of the defendant, the date of the alleged offense, the amount and type of substance sold, and the statute violated." *Lindsey*, 208 S.W.3d at 441 (citations omitted).

Duplicitous indictments—those alleging two separate offenses in one count—may violate an accused's right to notice of the charges against him. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Watson v. Jago*, 558 F.2d 330, 338-39 (6th Cir.1977). However, potential violations may be cured where the prosecution elects to rely solely on one offense and where the jury instructions are confined to that offense. *See Wiborg v. United States*, 163 U.S. 632, 648 (1896); *United States v. Robinson*, 651 F.2d 1188, 1195 (6th Cir.1981). *See also Britt v. North Carolina*, 404 U.S. 226, 237 n. 7 (1971) ( "Amendments to the indictment or

information are liberally allowed; duplicity and variances are no longer serious defects.")
(citation omitted).  Furthermore, as the state court observed, "the withdrawal from the jury's
consideration of one offense . . . does not constitute a forbidden amendment of the
indictment." *Lindsey*, 208 S.W.3d at 440 (quoting *United States v. Miller*, 471 U.S. 130, 138,
105 S. Ct. 1811, 84 L.Ed.2d 99 (1985).

Though the Court is dubious that state court's insertion of the "notice" discussion in
its analysis as to whether a state error was harmless could be characterized as an adjudication
on the merits of a constitutional "notice" claim, to the extent that it could be, the Court finds,
in the alternative, that the state court decision in this regard was not contrary to or an
unreasonable application of Supreme Court precedent.

### 3.  Motion for a Mistrial (Pet., Ground Four)

In this claim, Lindsey alleges that the state court erred by denying his motion for a
mistrial, which he based on misinformation he had been supplied by a Sullivan County
Detention Center correctional officer.  More specifically, petitioner maintains that, at the
trial, he presented a theory of defense based on identity. As part of his pre-trial investigation,
defense counsel was informed that another suspect identified by Officer Ramsey as a
participant in an unrelated drug buy was actually incarcerated at the time of the transaction.
According to a letter counsel received from Sergeant Lori Delp, Robert Gill was incarcerated
in their facility from November 30, 2001, until he was transferred to Brushy Mountain State
Penitentiary on January 29, 2003. Relying on this information, defense counsel posed the
following questions to Detective Ramsey on cross-examination:

DEFENSE COUNSEL: And as part of your investigation in this case, not this particular case but the broader investigation you made a mistake in one situation, didn't you?

DETECTIVE RAMSEY: How?

DEFENSE COUNSEL: A mistake regarding the identification of someone who sold drugs during the course [of] an undercover operation.

DETECTIVE RAMSEY: In reference to which?

DEFENSE COUNSEL: January 26th, 2002. Do you recall?

DETECTIVWE RAMSEY: No, I don't.

DEFENSE COUNSEL: Do you recall being involved in an investigation on January 26th, 2002 with Ginger Wilson where the subject was someone by the name of Robert Gill the Fourth [sic], went by the name of Beezo?

DETECTIVE RAMSEY: I don't know which one you are talking about.

DEFENSE COUNSEL: What I'm handing you Detective Ramsey is a report which I believe you prepared following an undercover operation that was done on January 26th, 2002 ................... And do you now recall that you were involved in a transaction involving a person known as Beezo?

DETECTIVE RAMSEY: Yes.

DEFENSE COUNSEL: Okay ... was it in fact that you identified Robert Beezo Gill as one of the persons ... involved in that drug transaction on January 26th, 2002?

DETECTIVE RAMSEY: Beezo was one of them, yes.

DEFENSE COUNSEL: And Beezo's name is mentioned quite a bit in your report, right?

27

| | |
|---|---|
| DETECTIVE RAMSEY: | Yes. |
| DEFENSE COUNSEL: | You do know, don't you Detective Ramsey, that on January 26th, 2002 Robert Gill was incarcerated in the Sullivan County jail. |
| DETECTIVE RAMSEY: | I don't know that, no. |
| DEFENSE COUNSEL: | You don't know that? |
| DETECTIVE RAMSEY: | Huh-uh (negative) |
| DEFENSE COUNSEL: | No further questions, Your Honor. |

During the trial, defense counsel learned that the information concerning Mr. Gill's confinement was incorrect, and that Mr. Gill, in fact, was not incarcerated on January 26, 2002. Because Lindsey used this incorrect information in his defense of misidentification, he moved for a mistrial.

The trial court denied the motion, after finding that there was nothing to show that the officer had intentionally misled defense counsel and that no manifest necessity required a mistrial to be declared. However, during the jury instructions, trial counsel read to the jury the following agreed stipulation:

> The parties have stipulated that prior to the trial of this case the records custodian for the Sullivan County jail advised counsel for [Defendant] in writing that Robert Beezo Gill the Fourth [sic] was continuously incarcerated at the Sullivan County jail from November 30th, 2001, until January 29th, 2003. During this trial, the District Attorney General's office was also provided with this same information by the Sullivan County jail records custodian; however, further investigation of court

> records has established that the information
> provided to counsel for [Defendant] and the
> District Attorney General's Office by the records
> custodian of the Sullivan County jail was incorrect
> and that in fact Robert Beezo Gill the Fourth [sic]
> was not incarcerated at the Sullivan County jail
> between December 4th, 2001, and April 24th,
> 2002.

*State v. Lindsey*, 208 S.W.3d at 432.

The TCCA reviewed this claim, finding no indication that the false information had been intentionally provided and that defense's primary concern (i.e., that its ill-fated attempt to impeach Officer Ramsey, the chief prosecution witness), would provide fodder for the prosecution's closing argument was allayed by reading to the jury the agreed stipulation explaining the defense's predicament. The TCCA also noted that there was other evidence of identity, including testimony by a witness and a videotape of the second drug-trafficking incident. Reviewing all these circumstances, the TCCA concurred with the trial court that no manifest necessity had arisen by virtue of the misinformation, such that a mistrial should have been declared.

Under the governing Supreme Court precedent, a court has the authority to declare a mistrial whenever, in its opinion, "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). A judge has broad discretion to grant a mistrial, when there is a high degree of necessity. *Renico v. Lett*, 130 S.Ct. 1855, 1863 (2010). "The manifest necessity inquiry is a flexible one, with reviewing

courts analyzing the trial court's exercise of discretion in light of the particular facts and circumstances of each individual case." *Harpster v. State of Ohio*, 128 F.3d 322, 329 (6th Cir. 1997) (citations omitted).

Though the TCCA did not cite to *Perez* or any other Supreme Court cases in resolving the issue, this Court will defer to the state court's ruling so long as neither the reasoning or result of the state court decision contradicts the relevant legal principle. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

Here, the TCCA examined the circumstances surrounding the giving of the incorrect information on which defense counsel had relied in attempting to impeach the key witness during cross-examination. Finding that counsel was not intentionally misled by the incorrect information, that there was no involvement by the district attorney, that curative steps had been taken by the trial court by means of reading the stipulation to the jury, and that there was other evidence on identification of Lindsey, the TCCA agreed with the trial court that no manifest necessity required a mistrial.

As the Supreme Court has instructed, "[b]ecause AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that "[t]he more general the rule" at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—"the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Renico*, 130 S.Ct. at 1855. Given the flexibility of the standards and the case-by-case analysis to be employed in determining whether there is a manifest necessity for

a mistrial, this Court concludes that neither the TCCA's reasoning nor the result it reached contradicts *Perez* and its line of cases.

The writ will not issue with respect to this claim.

## IV. **Conclusion**

For the above reasons, this *pro se* state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V. **Certificate of Appealability**

One final matter remains for discussion: whether to issue a certificate of appealability (COA) should Lindsey file a notice of appeal. See 28 U.S.C. § 2253(c)(1). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that one claim is not cognizable, that two have been procedurally defaulted, and that three would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, the decisions on those claims did not run contrary to well established federal law, did not reflect that the state courts had unreasonably applied that law, and did not demonstrate that the state courts had disposed of those claims by unreasonably determining the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement

proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance

of a COA.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.


**ENTER**:


<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE

32